In so far as the defendant's liability is concerned, the material facts may thus be summarized: On or about February 20, 1942, the plaintiff purchased from a retail store at Norwalk, a loaf of sliced bread which had been baked, wrapped and sold by the defendant to its retail dealer. Within a period, not exceeding 48 hours thereafter, the bread was opened by the plaintiff, several slices consumed, each of which mildly offended his sense of taste by giving a sensation or impression of staleness, or hardness, or lumpiness; and finally, upon examination of the unconsumed portion of the loaf, he discovered that each slice encased a black and hard substance. Immediately after this discovery the plaintiff experienced nausea, which condition continued intermittently for three succeeding days, creating in him a protracted aversion to bread both from the standpoint of its appearance and taste. On the morning following his unpleasant experience the plaintiff returned several unconsumed slices to the retail dealer, requesting they be sent to the baking company for critical examination and analysis. *Page 407 
The tainted loaf of bread was admittedly baked, wrapped and shipped by the defendant in and from its Bridgeport plant, which serviced each retail outlet in Fairfield County. On March 19, 1942, the defendant, acting through its Bridgeport plant manager, addressed to the plaintiff a cordial, explanatory and apologetic letter of good will, a material portion of which follows: "The loaf of bread you received and which had the hard dark lumps in it was baked on a Friday night. Our machines are all oiled on Friday on which we have our heaviest bake. Our man who has done this work for many years went into the army that week and the new man oiled a little heavier than he should have. We dislike to have things like this happen, but I can assure you that while it did not look palatable, it was entirely harmless as we use, like most bakers, a mineral oil, the same as many people use as a medicine."
The defendant was under a fundamental duty to take precautions which careful and prudent bakers would take under similar circumstances. Carroll vs. New York Pie Baking Co.,215 App. Div. (N.Y.) 240, 213 N.Y.S. 553. "In addition to the details of the usual baking practice, the circumstances to be taken into consideration include the fact that the food is prepared for consumption in its existing state and it should be free from impurities which are dangerous to health since the consumer is ordinarily unable to examine the food and normally cannot be expected to do so. Thus, normal use of food containing impurities or foreign particles results in a reasonable certainty of personal harm to the consumer and, where harm does result, it is actionable." Bissonette vs. NationalBiscuit Co., 100 F.2d 1003, 1004.
By way of defense to its claimed negligence, the defendant points to a modern, well-regulated and scientifically improved baking plant, utilizing as it unquestionably does, carefully selected ingredients, devices and appliances. Further, says the defendant, the plaintiff could not have been harmed by the substance, assuming its presence in the bread, because it was nothing more than an oil deposit, akin to medicinal mineral oil. And finally, in defense, the baking corporation claims that its negligence, if any, has not been demonstrated to have been a substantial factor in producing the plaintiff's nausea and discomfort.
The fact that the defendant utilized modern baking devices and wholesome ingredients does not eliminate the possibility *Page 408 
of negligence by an employee in permitting the oil to drip into the bread dough or in failing to discover it after it was there.Jump vs. Ensign-Bickford Co., 117 Conn. 110, 121. The doctrine of res ipsa loquitur applies and an inference of negligence is drawn on the physical facts present, coupled with the declarations contained in the defendant's letter to the plaintiff. Gross vs. Loft, Inc., 121 Conn. 394; Bagre vs. DaggettChocolate Co., 126 id. 659.
Likewise a right of the plaintiff has been invaded for which compensation is due. There can be no doubt but that the presence and discovery of the oil constituted a proximate cause of the plaintiff's physical upset. Proximate cause presents a question of fact unless no causal relation can reasonably be found. McDowell vs. Federal Tea Co., Inc., 128 Conn. 437. And in determining causal connection, the court is concerned not with possibilities but with reasonable probabilities.Richardson vs. Pratt Whitney Mfg. Co., 129 Conn. 669.
While it is true that the plaintiff required no medical assistance and while it is equally true that he was not forced to absent himself from his employment as the caretaker or manager of a Norwalk estate, nevertheless, his experience was unpleasant, disagreeable and of some duration. Moreover, it resulted from a situation not of his making and in which he can, in no way, be said to have been contributorily negligent.
Further, the plaintiff presented himself as an honest, sincere and reliable litigant, conscious of what he believes to have been an act of negligence resulting in his physical discomfort. To conclude that this discomfort flowed from the defendant's inattention is not to indulge in speculation concerning possibilities; rather, every sign points to the reasonable probability of the plaintiff's claims including his one of physical upset.
 Judgment may enter for the plaintiff to recover of the defendant the sum of $75.