E. M. JUMP *vs.* THE ENSIGN-BICKFORD COMPANY.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, JS.

Argued March 7th—decided June 27th, 1933.

Thomas L. Johnson, of North Carolina, and *Ralph O. Wells*, with whom was *William S. Locke*, and, on the brief, *Thomas S. Rollins, Jr.*, for the appellant (plaintiff).

*Charles Welles Gross*, with whom, on the brief, was *Haywood Scott*, of Missouri, for the appellee (defendant).

MALTBIE, C. J. The plaintiff was very seriously injured by the premature discharge of dynamite when he was engaged in blasting certain rocks in a mine in Tennessee. The blast had been prepared by another employee of the company operating the mine, who had inserted a piece of fuse about two feet long. It should have taken about a minute and a half for the fire to travel from the outer end to the cap which would explode the dynamite. The explosion came, in fact, within two or three seconds after, as the plaintiff claimed, he had applied the flame of his miner's lamp to the end of the fuse. His contention is that this was due to defects in the fuse which caused the fire to run through it almost instantaneously. The fuse was manufactured by the defendant and, while not sold by it directly to the company operating the mine, the jury could not well have found otherwise than that nothing

could have happened to it between the time it left the factory and the time it was used which would materially affect the rapidity with which it would burn. The plaintiff brought this action against the defendant upon the ground that it was negligent in the manufacture of the fuse and in its inspection before it shipped it from its factory. The jury returned a verdict for the plaintiff which the trial court set aside as against the evidence, and from that ruling this appeal is taken.

The plaintiff offered evidence tending to prove that the blast was so prepared that the dynamite could not have been exploded except by the fire running through the fuse. The only persons present in the portion of the mine where the explosion occurred while the blast was being prepared and at the time of the accident were the plaintiff and a fellow employee, who testified for him, and while there was certain evidence from which inferences contrary to the testimony they gave might have been drawn, the jury might have accepted it, had it stood alone and, applying the charge of the court, inferred from it negligence on the part of the defendant. The fuse sold by the defendant was wrapped in packages each of which contained two pieces about fifty feet long, and was so marked that its passage through the process of manufacture might have been traced. The particular piece of fuse involved in the accident could not, however, be identified as coming from any definite package. The defendant proceeded to produce evidence showing in detail the process of manufacturing fuse in use at the time of the accident, describing the machines through which it passed and the various safeguards, tests and inspections used to insure that all fuse sold would have a substantially uniform burning time. No claim is made by the plaintiff that there was anything negligent in the defendant's process of manufacture, if the machines oper-

ated as they were designed to do and the operatives properly performed their duties. This process, from the time the powder used in the fuse was placed in a receptacle over the machine which performed the first operation until it went through an inspecting machine, was entirely mechanical.

The defendant offered evidence that it was not possible to produce upon its machines fuse which would burn as rapidly as the plaintiff contended did the piece of fuse involved in the accident, and that any defect that might have occurred in the fuse would have retarded or stopped its burning instead of accelerating it. The defendant's witnesses also described the inspecting machines through which the fuse passed after its manufacture was completed except for the outer coating. According to the evidence these operated in such a way that if any section of the fuse had not contained the usual amount of powder or had had any other defect which might have caused the fuse to burn with more than the usual rapidity, the fuse would necessarily have been smaller; that this would have caused the inspection machine to stop; and that then it was the duty of the operator in charge to cut out the defective portion and dispose of it as waste material. The contention of the defendant is that by this evidence it had conclusively rebutted any inference of negligence on its part that might have been drawn from the fact that the explosion occurred in the way the plaintiff claimed, and as there was no other basis for finding it negligent, that the trial court was correct in setting the verdict aside.

The evidence of the defendant as to its process of manufacturing the fuse was uncontradicted and nothing upon the face of the record suggests any reason why the jury ought not to have credited it. The trial court, in its memorandum setting the verdict aside,

regarded this evidence as establishing "an indisputable physical fact" which did not permit a reasonable conclusion of negligence on the defendant's part. Counsel for the plaintiff ably analyzed the cases in which, in reviewing rulings of trial courts upon motions to set verdicts aside as against the evidence, we have applied the doctrine summarized in *Mlynar* v. *Merriman & Sons, Inc.*, 114 Conn. 647, 650, 159 Atl. 658: "When testimony is thus in conflict with indisputable physical facts, the facts demonstrate that the testimony is either intentionally or unintentionally untrue, and leave no real question of conflict of evidence for the jury concerning which reasonable minds can reasonably differ." The plaintiff contends that this principle should be applied only where the fact treated as undisputed is judicially admitted or virtually conceded, or the evidence as to it is uncontradicted and its existence or nonexistence is easily ascertainable and clearly demonstrable.

While, in this instance, there was no judicial admission of the truth of the description of the manufacturing process of the defendant or the fact that quick burning fuse could not be produced upon its machines, it is significant that the plaintiff advances only two theories in accordance with which it claims that such fuse might have been produced; one is that a powder more quickly burning than that ordinarily used might in some way have been introduced into the fuse, and the other is dependent upon a combination of several defects occurring at one time in defendant's machinery; but the first of these theories is opposed by the testimony of the defendant that no powder which upon any reasonable hypothesis might have been used in the fuse would have made it as quick burning as the plaintiff claims was the piece involved in the accident, and the other theory finds no support in the evidence. It

is also significant that though the machinery and methods of manufacture were very fully described and in part demonstrated before the jury, the plaintiff offered no expert testimony to contradict that of the defendant's witnesses as to the possibility of producing quick burning fuse and that he sought no opportunity to have the machines examined by experienced mechanical engineers, an opportunity which, so far as appears, would have been granted him by the defendant had he requested it. Unless the evidence offered by the defendant as to its process of manufacture is to be disregarded, it negatives any reasonable basis for a conclusion that its machines could have produced fuse which would have burned at such a rate that the fire would run through a piece two feet or more in length in two or three seconds; and we can find in the evidence no reasonable ground which would have justified the jury in disregarding that evidence. The trial court was not in error in setting the verdict aside.

Both parties have filed bills of exceptions. That of the plaintiff rests upon the failure of the trial court to give certain of its requests to charge. One of these was to the effect that, if the jury accepted the testimony of the plaintiff's witnesses as true, they might infer from it that there was a defect in the fuse due to the defendant's negligence in manufacturing it. As this request was phrased, the jury might well have understood from it that they were to consider the testimony of the plaintiff's witnesses in determining whether or not the defendant was negligent apart from the evidence it offered, which would not have been proper; the jury's conclusion could only be properly reached by considering all the evidence. *State* v. *Suffield & Thompsonville Bridge Co.*, 82 Conn. 460, 465, 74 Atl. 775. The trial court might have explained to the jury somewhat more fully than it did the application to the particular facts

of the case of the principle under which inferences might be drawn as to negligence in the manufacture of the fuse from the circumstances of the accident, but the plaintiff does not complain of the charge as far as it went.

Another of the plaintiff's exceptions raises the question as to the law of Tennessee, where the accident occurred, concerning the liability of the manufacturer of such an article as the fuse involved in this case to one injured by a defect in it, a question which is also raised in the defendant's bill of exceptions. The trial court charged the jury that the law of Tennessee was, briefly stated, this: "The defendant as the manufacturer is liable to a third person where the article so sold is of such kind as to be 'imminently dangerous' to human life or health; and an article is 'imminently dangerous' where, although it may safely be used for the purpose intended if properly constructed, yet, by reason of its defective construction, a threatening or impending injury may reasonably be apprehended to anyone properly using the article for the purpose for which it was intended." The general principle of liability stated in the first part of this portion of the charge accords with what is said in *Burkett* v. *Studebaker Bros. Mfg. Co.*, 126 Tenn. 467, 472, 150 S. W. 421, and we find nothing to qualify it in the subsequent cases to which we are referred. *Boyd* v. *Coca Cola Bottling Works*, 132 Tenn. 23, 177 S. W. 80; *Liggett & Myers Tobacco Co.* v. *Cannon*, 132 Tenn. 419, 178 S. W. 1009; *Vaughn* v. *Millington Motor Co.*, 160 Tenn. 197, 22 S. W. (2d) 226. Indeed, the latter case dealt with a possible liability upon another and distinct ground, that of a manufacturer for putting upon the market an article which he knows to be defective but the defect in which is such that a purchaser of it would not readily discover it. The statement in the *Burkett*

case that the manufacturer is liable when he has knowledge of the defective condition is a part of the court's reference to a possible liability upon the ground last stated. As we find no decisions in Tennessee applying the principle upon which the trial court charged the jury, or in any way defining or qualifying its terms and determining the law of that State beyond the bare principle announced, we must proceed upon the presumption that its common law is like our own and in accordance with the general current of authorities in the country. *American Woolen Co.* v. *Maaget,* 86 Conn. 234, 243, 85 Atl. 583; *Artman* v. *Artman,* 111 Conn. 124, 129, 149 Atl. 246.

With the statement of law made in the charge the plaintiff quarrels because the trial court did not hold that the fuse in question was an "inherently dangerous" instrumentality, or, to adopt a phrase used at times by us, "intrinsically dangerous," but confined its charge to instrumentalities "imminently dangerous" and left it to the jury to say whether the fuse in question was such an instrumentality. On the other hand, the defendant claims that the fuse was not within the class of articles which properly can be designated even as "imminently dangerous." If there is any substantial validity, in the determination of liability for resulting injuries, in a distinction between an "inherently dangerous" instrumentality and an "imminently dangerous" instrumentality, which we doubt, it lies in the fact that, as regards the former, the danger arises from the nature and character of the thing itself; *Godfrey* v. *Connecticut Co.,* 98 Conn. 63, 67, 118 Atl. 446; whereas, in the latter, the article is of such a nature that danger in its use is imminent, that is, its use for the purpose for which it is intended is fraught with immediate peril and carries a threat of serious impending danger. *Farley* v. *Tower Co.,* 271 Mass. 230, 234, 171

N. E. 639, 42 A. L. R. 1244; Amer. Law Institute, Restatement, Torts (Tent. Draft No. 5) § 265.

The fuse here in question was not in any proper sense inherently dangerous, for in itself there was nothing to indicate that it would work serious harm, as might a considerable amount of dynamite gathered together for blasting; see *Norwalk Gas Light Co.* v. *Norwalk,* 63 Conn. 495, 527, 28 Atl. 32; *Worth* v. *Dunn,* 98 Conn. 51, 60, 118 Atl. 467; *Welz* v. *Manzillo,* 113 Conn. 674, 155 Atl. 84; or a fire cracker in which a peculiarly explosive mixture is used. *Burbee* v. *McFarland,* 114 Conn. 56, 157 Atl. 538. On the other hand, a fuse such as that involved in this case is designed for use in connection with high explosives for blasting rock and other substances and such use obviously carries with it a grave danger of immediately resulting serious injury. It falls within the class of "imminently dangerous" instrumentalities, as that phrase is used in the principle imposing liability upon a manufacturer for negligence in producing such articles. We cannot agree with the defendant's contention that an article is not to be regarded as "imminently dangerous" where, unless there was a defect in it, no injury would result; the very basis of liability of the manufacturer in such cases is the fact that the article has become a source of actual danger because of negligence in producing it. Bohlen, Amer. Law Institute, Restatement, Torts (Tent. Draft No. 5) § 265; *MacPherson* v. *Buick Motor Car Co.,* 217 N. Y. 382, 389, 111 N. E. 1050; *Heaven* v. *Pender,* L. R. 11 Q. B. D. 503. If the lack of an expectation upon the part of the manufacturer that an imminently dangerous instrumentality will be tested by the person intending to use it is necessary to establish liability in a case such as this, there is nothing to indicate here that such a test was in any way likely to be made and the fact that the

company operating the mines did in fact make tests of the fuse it bought, if of any consequence as regards the individual miner who might use it, is immaterial.

The defendant also complains of a portion of the charge in which the trial court instructed the jury in effect that, if they found that the premature blast occurred as the plaintiff claimed, this would be circumstantial evidence that the fuse was defective and the defendant negligent. The court did not use in its charge the phrase *"res ipsa loquitur;"* very likely following *Firszt* v. *Capitol Park Realty Co.,* 98 Conn. 627, 644, 120 Atl. 300, in which we approved the failure of the trial court to specifically refer to that doctrine. We have never taken a technical view of it. As we said in *Stebel* v. *Connecticut Co.,* 90 Conn. 24, 26, 96 Atl. 171: "The doctrine of *res ipsa loquitur* is a rule of common sense and not a rule of law which dispenses with proof of negligence. It is a convenient formula for saying that a plaintiff may, in some cases, sustain the burden of proving that the defendant was more probably negligent than not, by showing how the accident occurred, without offering any evidence to show why it occurred." See also *Sliwowski* v. *New York, N. H. & H. R. Co.,* 94 Conn. 303, 309, 108 Atl. 805; *Ruerat* v. *Stevens,* 113 Conn. 333, 337, 155 Atl. 219. The plaintiff does not stress the application of the doctrine in this case in any technical sense, but does claim that the jury might draw the inference which was suggested by the trial court. If the accident did occur as the plaintiff claimed, this fact, coupled with the further fact as to which the defendant's own witnesses testified, that it was not reasonably possible that anything could have happened to the fuse to make it quick burning after it left its factory, would afford a basis for an inference that the fuse was defective when it left the factory; the defendant in manufacturing fuse to be

used in blasting was undoubtedly obligated to use care proportionate to the danger inherent in that use; and the jury might well draw a further inference, in the absence of explanatory evidence by the defendant, that the defective quality of the fuse was due to some negligence in its manufacture or inspection.

The process of manufacture, testing and inspection of the fuse was entirely in the control of the defendant. In *Schiesel* v. *Poli Realty Co.*, 108 Conn. 115, 121, 142 Atl. 812, following *Stebel* v. *Connecticut Co., supra,* we stated three conditions under which the doctrine of *res ipsa loquitur* might apply: "(1) that the situation, condition or apparatus 'must be such that in the ordinary instance no' injury would result 'unless from a careless construction, inspection, or user; (2) both inspection and user must have been at the time of the injury in the control of the party charged with neglect; (3) the injurious occurrence or condition must have happened irrespective of any voluntary action at the time by the party injured.'" These conditions afford, in the main, a fair basis upon which to test the drawing of an inference of negligence upon the part of the defendant in the case before us. If the jury believed the testimony of the plaintiff as to the way in which the accident happened, then they might find that, in the ordinary course of events, no injury by reason of quick combustion of the fuse would have resulted unless from carelessness in its manufacture, testing or inspection, irrespective of any action of the plaintiff which in any way conduced to bring it about; indeed, his action in lighting the fuse at the outer end in the ordinary way was no more significant as regards the application of the rule than the act of the plaintiff in *Thorson* v. *Groton & Stonington Street Ry. Co.*, 85 Conn. 11, 15, 81 Atl. 1024, in seating herself in the trolley car under the ventilator which fell, or the plain-

tiff in *Firszt* v. *Capitol Park Realty Co.*, *supra*, in taking her position in the swing which broke. To paraphrase the quotation we made in *Killian* v. *Logan*, 115 Conn. 437, 442, 162 Atl. 30: No voluntary or other action of the plaintiff contributed to the failure of the fuse to burn as it ordinarily would, and it cannot be justly held that such failure was not admissible as a circumstance tending to show negligence upon the part of the appellant.

It is true that at the time of the accident the fuse was in the possession and control of the plaintiff, and the second condition we have stated is not literally fulfilled. The purpose of that condition is to exclude the possibility of an intervening act of the plaintiff or a third party which causes or contributes to produce the accident, and it undoubtedly states a necessary precaution for a sound application of the rule in most cases. In the case at bar, however, the finding, which we have said the jury might make from the defendant's own evidence, that nothing physically could be done to the fuse after it left the defendant's factory to cause it to burn as rapidly as it did, served to obviate in this case the need of that precaution. Any defect in the fuse which would cause it to burn as quickly as the plaintiff claims it did would necessarily be due to a failure in the defendant's manufacturing process or in its inspection and testing of the fuse. The allegations of the complaint were broad enough to include negligence in these respects and we have decided that the principle of proof we are considering is not to be held inapplicable because of specific allegations of negligence in the complaint. *Thorson* v. *Groton & Stonington Street Ry. Co.*, *supra*, p. 15; *Firszt* v. *Capitol Park Realty Co.*, *supra*, p. 642. Any discussion of the other claimed errors in the charge of the court or in its failure to give requests to charge would not be profitable.

The defendant seeks in its bill of exceptions to have reviewed the action of the trial court in sustaining a demurrer to two special defenses it filed. We have heretofore held that only rulings in the course of a trial may be presented by bills of exception. *State* v. *Thresher,* 77 Conn. 70, 77, 58 Atl. 460; *Cottrell* v. *Cottrell,* 106 Conn. 411, 422, 138 Atl. 458; *Gans* v. *Olchin & Co., Inc.,* 109 Conn. 164, 169, 145 Atl. 751. This, which seems upon its face a rather technical position to take, perhaps requires a word of explanation. An appeal from the action of the trial court upon a motion to set the verdict aside brings up only the issue of the sufficiency of the evidence to support the verdict. *Marcil* v. *Merriman & Sons,* 115 Conn. 678, 680, 163 Atl. 411. If, as in this case, the trial court is correct in setting the verdict aside upon that issue, the necessary judgment is that there was no error. If we should consider the trial court's ruling upon the demurrer and conclude that it was in error our procedure affords no means for correcting its decision on this appeal. We could not remand the case with direction to overrule the demurrer or for other relief dependent upon the reversal of the trial court's ruling because that could only result from a judgment that there was error, a judgment which could not be entered on the issues presented by this appeal. The situation is very different as regards rulings during the course of the trial, which affect only that particular trial, and in no way are controlling upon a second hearing of the case. We cannot therefore pass upon that portion of the defendant's bill of exceptions which deals with the ruling upon the demurrer.

There is no error.

In this opinion the other judges concurred.