HORACE D. LOWMAN, ADMINISTRATOR (ESTATE OF DANIEL P. LOWMAN) *v.* HOUSING AUTHORITY OF THE CITY OF STAMFORD

BALDWIN, C. J., KING, MURPHY, SHEA and ALCORN, Js.

Argued May 9—decided July 11, 1963

666

*Morgan P. Ames,* for the appellant (plaintiff).

*Milton H. Belinkie,* with whom were *Joseph G. Shapiro* and *John C. Macrides,* for the appellee (defendant).

SHEA, J.  The plaintiff brought this action to recover damages for the death of his decedent, alleged to have been caused by the negligence of the defendant.  After a trial to the court, judgment was rendered for the defendant.  The plaintiff has appealed.

The finding of the trial court, which is not subject to correction, recites the following facts:  The defendant housing authority owns a moderate-rental apartment building in which the family of the decedent, a boy nineteen months old, lived, since 1952, under a written lease which contained a clause permitting the defendant to enter the premises at all reasonable times to examine them or make necessary repairs.  Under the lease, the defendant agreed to furnish "water and heat in such quantity as is customary."  A Stamford ordinance requires the lessor of every dwelling to supply, for the heating of water, facilities which shall permit an adequate amount of water to be drawn at every kitchen sink, lavatory basin, bathtub or shower at a temperature of not less than 140 degrees Fahrenheit.  Stamford Ordinances, No. 65

Supplemental, § 5.8 (Aug. 30, 1957). The ordinance also requires that every plumbing fixture shall be properly installed and shall be maintained in good sanitary working condition, free from defects, leaks and obstructions, and that every supplied facility, piece of equipment or utility required by the ordinance shall be so constructed or installed as to function safely and effectively and shall be maintained in a satisfactory working condition. §§ 7.4, 7.6. The apartment occupied by the decedent and his family was in a two-story building which contained other apartments. The apartment had three rooms on the first floor and three bedrooms and a bath on the second floor. On May 25, 1960, at about 4:30 p.m., the decedent's mother, while in the kitchen, heard a child screaming. She ran upstairs and found the decedent sitting in the bathroom sink, with his legs pressed against the hot water faucet and hot water pouring out on his body. She grabbed the child and ran downstairs. After observing burns about his body, she rushed him to the Stamford Hospital. The following morning, he died of pulmonary edema caused by first- and second-degree burns.

The court also found that hot water for the decedent's apartment was produced by a furnace in the basement of an adjacent building. The equipment to supply and regulate hot water for all the apartments is under the exclusive control of the defendant. The furnace is fired by an oil burner and has a boiler which contains hot water for heating the apartments. A coil system containing cold water runs through the hot water in the boiler, and the water within the coil system is heated by that hot water. The heated water is piped from the coil system through a mixing valve which regulates the

temperature of the water, and then the water goes underground by lines to the apartments. The mixing valve is the heart of this domestic hot-water supply system. Its function is to temper the hot water by a mixture of cold water so as to regulate and control the temperature of the hot water before it goes through the pipes to the apartments. A relief or safety valve, placed on the pipe running from the mixing valve, is set at a fixed temperature so that if the temperature of the water exceeds the fixed temperature the safety valve blows off and the water is discharged from the line. When the mixing valve and the safety valve are operating properly, any water heated in excess of the fixed temperature cannot enter the apartments. In 1957, the mixing valve did not function properly. At that time it was dismantled, cleaned and put together again. It is composed entirely of brass and copper. The furnace and the equipment for heating hot water are maintained by men who are neither master plumbers nor journeymen. Training as plumbers is, however, not required to operate, maintain or repair the system. The defendant gave no instructions to its employees as to what the temperature of the hot water should be, nor were the employees ever instructed to test or inspect the hot water at the faucets in the apartments. The safety valve was set at a temperature of 175 degrees Fahrenheit, so that the valve would blow off if the heat of the water exceeded that temperature. In April, 1959, the safety valve blew off, indicating that the water was too hot. At that time, one of the defendant's maintenance men reduced the temperature of the water in the mixing valve.

The court further found that the hot water furnished to the apartments was maintained at an

equal level both before and after May, 1960. Prior to May 25, 1960, no one had been burned by hot water in any of the apartments in the building occupied by the decedent, nor had anyone complained that the hot water was too hot. The temperature of domestic hot water in the average home is kept between 140 and 150 degrees. Where the hot-water heating unit must service a number of families in separate buildings, one of which is from 90 to 100 feet away, as was the case here, a safety-valve setting of 175 degrees is not unreasonable. Hot water at 140 degrees will cause first- and second-degree burns, depending on the sensitivity of the skin of the person and the length of time he is exposed to the hot water. Hot water above 170 degrees will result in third-degree burns. The decedent did not suffer third-degree burns. On the day of the accident, the defendant's domestic hot-water system was a standard, proper hookup; the piping and connections were in good shape; and everything was in order. The apartment house is a tenement house within the meaning of § 19-342 of the General Statutes.

The court concluded that the water in the decedent's apartment was not excessively hot, that the defendant had no notice, either actual or constructive, of any defect in the hot-water system, and that the defendant was not negligent.

The plaintiff claims that he made out a prima facie case of negligence under the doctrine of res ipsa loquitur, that the defendant failed to prove that the accident was the result of a situation beyond its control, and that therefore the plaintiff was entitled to judgment. "[T]he doctrine of *res ipsa loquitur* is a rule of common sense and not a rule of law which dispenses with proof of negli-

gence. It is a convenient formula for saying that a plaintiff may, in some cases, sustain the burden of proving that the defendant was more probably negligent than not, by showing how the accident occurred, without offering any evidence to show why it occurred." *Stebel* v. *Connecticut Co.*, 90 Conn. 24, 26, 96 A. 171. Where common experience has demonstrated that no injury would ordinarily result from a situation, condition or apparatus unless there was careless construction, inspection or user, and the construction, inspection and user were all in the control of the party charged with neglect, no voluntary action of the party injured being involved, common sense permits an inference of negligence from proof of the injury and the physical agency inflicting it, without requiring proof of facts pointing to the responsible human cause. The result is simply that such proof, without proof of further facts tending to show negligence, satisfies the plaintiff's duty of producing evidence sufficient to permit the trier, whether court or jury, to draw an inference of negligence. *Ruerat* v. *Stevens,* 113 Conn. 333, 337, 155 A. 219. The doctrine permits, but does not compel, such an inference. *Fogarty* v. *M. J. Beuchler & Son, Inc.*, 124 Conn. 325, 330, 199 A. 550. The doctrine has no evidential force, does not shift the burden of proof and does not give rise to a presumption. *Ryan* v. *George L. Lilley Co.*, 121 Conn. 26, 30, 183 A. 2. It is but a specific application of the general principle that negligence can be proved by circumstantial evidence.

There are strong reasons against the application of the doctrine in this case. The injury was not one which occurred in the ordinary and normal use of the hot water in the bathroom. This unfortunate accident occurred when the decedent managed to

get into the washbasin, in some unexplained manner, and turned on the hot-water faucet with such force that the water poured over his body for an extended time. The child was unable to extricate himself. Under the Stamford ordinance (No. 65 Supplemental) to which we have referred, the defendant was required to supply hot water to the decedent's apartment at a temperature of not less than 140 degrees. As pointed out, water at this temperature will cause first- and second-degree burns on a person's skin, depending on the duration of exposure to the water and the sensitivity of the skin. The circumstances indicate that the decedent's injuries would have occurred in the absence of careless construction, inspection or user. Accordingly, the first of the three conditions essential to the application of the doctrine of res ipsa loquitur is not satisfied. See *Briganti* v. *Connecticut Co.,* 119 Conn. 316, 320, 175 A. 679. The court concluded that the water was not excessively hot and that the defendant was not negligent. These conclusions are fully supported by the subordinate facts and conclusively dispose of the claim that the principle of res ipsa loquitur was applicable to this case. *Fogarty* v. *M. J. Beuchler & Son, Inc.,* supra, 331.

The plaintiff assumes that the decedent's injuries were caused by the failure of a mixing valve to function properly and that the defendant was negligent in failing to inspect and repair the valve. He also assumes that the water was too hot for ordinary use and that the defendant, by a reasonable inspection, should have discovered the condition. These assumptions are not only without support in the unchallenged facts found by the court but are expressly contrary to them. The difficulty with the

plaintiff's argument lies in the fact that the court refused to find that there was any defect in the mixing valve. Furthermore, the court found that a safety-valve setting of 175 degrees was, under the circumstances of this case, not unreasonable.

Since the plaintiff failed to prove that the decedent's injuries were caused by any defect in the water system, there is no merit to the claim that he is entitled to recover for the failure to carry out a contractual obligation to repair.

There is no error.

In this opinion the other judges concurred.