ANSELM SCHURGAST *v.* ROGER M. SCHUMANN ET AL.

ALCORN, HOUSE, COTTER, THIM and RYAN, Js.

Argued January 3—decided May 21, 1968

*George E. McGoldrick,* with whom was *William G. Comiskey,* for the appellants (original defendants) and for the appellee (third-party plaintiff).

*Valentine J. Sacco,* for the appellant (third-party defendant).

*George Levine,* with whom, on the brief, was *Melvin S. Katz,* for the appellee (original plaintiff).

RYAN, J. In the original action, the plaintiff, Anselm Schurgast, seeks to recover damages for the destruction by fire of a house which the defendant Roger M. Schumann had agreed to construct for him. The first count sounds in negligence and sets forth specific acts of negligence by Schumann and his employees, the defendants Louis Corte and Rodney Weed. In the second count, Schurgast alleges facts for the obvious purpose of relating the essential elements of the doctrine of res ipsa loquitur. Although no demurrer was addressed to this count, it should be noted that, since there is no allegation of negligence on the part of the defendants, it fails to set forth a cause of action. The third count sounds in contract. During the course of the trial, the third count was withdrawn and is not involved in the present appeal. Schumann insti-

tuted a third-party action against the Aetna Insurance Company, hereinafter sometimes referred to as the third-party defendant and sometimes as Aetna, wherein he sought a judgment declaring that a manufacturers' and contractors' liability policy issued to him by the third-party defendant covered the events described in Schurgast's complaint, that the third-party defendant must defend the action brought against Schumann by Schurgast, and that the third-party defendant must pay any judgment which may be obtained by Schurgast against Schumann up to the limits of the policy.

The trial court found the issues on the original action for Schurgast against Schumann and against Weed and Corte, his two employees. It also found the issues on the third-party action in favor of Schumann, the third-party plaintiff and one of the defendants in the original action, against Aetna, the third-party defendant. Appeals have been taken by the defendants on the original action and by the third-party defendant. We shall consider first the appeal of the original defendants from the judgment of the trial court against them.

## I

In their first assignment of error, the original defendants seek to have added to the finding certain facts which they claim are either admitted or undisputed. "This court has the power to correct the finding where it fails to include admitted or undisputed facts. Practice Book § 627; *Morrone* v. *Jose,* 153 Conn. 275, 277, 216 A.2d 196; *National Broadcasting Co.* v. *Rose,* 153 Conn. 219, 223, 215 A.2d 123. A fact, however, is not admitted or undisputed simply because it is uncontradicted. . . . In the instant case, there was no failure on the part

of the trial court to include any paragraphs of the draft finding which were admitted or undisputed, as set forth under our rule in cases such as *Brown* v. *Connecticut Light & Power Co.,* 145 Conn. 290, 293, 141 A.2d 634." *Solari* v. *Seperak,* 154 Conn. 179, 182, 224 A.2d 529.

The second assignment of error attacks certain paragraphs of the finding as having been found without evidence. This claim is without merit since the challenged paragraphs of the finding either are directly supported by the evidence or are based on inferences reasonably drawn from the evidence. *Cappiello* v. *Haselman,* 154 Conn. 490, 492, 227 A.2d 79.

The finding is not subject to any material change and discloses the following facts: On August 26, 1959, Schurgast entered into a written agreement with Schumann, a building contractor, in which Schumann agreed to construct a one-family dwelling for Schurgast on land owned by Schurgast in Meriden. Prior to January 11, 1960, Schumann and his employees had begun construction of the Schurgast house. The foundation of the house was completed, the house was framed in, the roof was on, the sides were shingled, the windows and the doors were in place, locks were in the doors, the insulation was in, and the rough plumbing, the rough electrical work and the water service were installed. On the morning of January 11, 1960, the house was completely destroyed by fire. At the time of the fire, Corte and Weed were employees of Schumann and were doing carpentry work on the Schurgast house. Schumann safeguarded the Schurgast house while it was under construction. At Schumann's instruction the house was locked at night. There were only two keys to the house; Schumann had one, and

Corte and Weed shared the other. Schurgast did not have a key to the house. Schumann engaged all subcontractors on the house and directed them as to when to perform their work. Schurgast made no arrangements with subcontractors. Schumann was the only person who gave instructions to his employees; Schurgast gave them no instructions. No one could enter the Schurgast house without the permission of Schumann. On the morning of the fire, Schumann and his employees had control of the house. Approximately two years prior to the fire, Schumann had purchased a new salamander stove. A salamander is a tool of the trade of a building contractor which is used to heat a building under construction and to dry plaster. Schumann's salamander was made of heavy-gauge steel, was about five feet high, weighed about twenty-five pounds and burned kerosene. This stove had been used by the defendants on other jobs prior to this one. It was placed in the kitchen on the first floor of the Schurgast house about three weeks before the fire and was used for a period of time prior to the fire. On the morning of the fire, inspection and use of the salamander were within the control of the defendants. The stove rested on three bricks on the kitchen floor. It had no flue or exhaust pipe to the outdoors. It held between three and five gallons of kerosene. The amount of air entering the salamander was regulated by one of two levers. The amount of heat provided was regulated by controlling the amount of air entering the stove. It was necessary to check and clean the salamander regularly to ensure that no dirt or foreign matter would interfere with its proper operation. On the morning of the fire, the salamander was in good condition. Ordinarily, a salamander which is in good

condition will not start a fire except as the result of a careless inspection or user. On the morning of the fire, Corte and Weed arrived at the Schurgast house at about 8 a.m. They filled the stove by having one man pour kerosene from a can, while the other man held open a hole in the stove. They then lit the stove by igniting a piece of paper and inserting it through the hole into which the kerosene had been poured. Shortly thereafter, Corte and Weed began to work in a second-floor bedroom. Sometime between 9 a.m. and 9:30 a.m., Corte left the house to get coffee for himself and Weed. He returned to the house with coffee after fifteen or twenty minutes. Corte passed through the kitchen when he went out and on his return. On going out he locked the rear door. Upon his return, he went back to the second-floor bedroom where he and Weed were working. Corte and Weed were the only people in the Schurgast house on the morning of the fire. Shortly before 11 a.m., Corte and Weed smelled smoke, and, when they went down to the kitchen, they found the floor surrounding the salamander in flames. Prior to the igniting of the floor around the stove, the only fire in the Schurgast house was the fire in the salamander. The fire in the salamander escaped and ignited the kitchen floor. When first discovered, the fire was confined to the area immediately surrounding the salamander. The kitchen floor consisted of seasoned, laminated plywood, one and one-eighth inches thick. When Corte and Weed got to the kitchen, the salamander was standing upright. They spent from one and one-half to five minutes trying to put out the fire. When they were unable to extinguish it, Corte went to a neighborhood house and telephoned the fire department. The fire department

arrived within seven or eight minutes after receiving Corte's call. At this time, the house was engulfed in flames, and the fire was burning rapidly. The house burned to the foundation and collapsed into the basement. The salamander was demolished in the fire. Schurgast had nothing to do with the fire which destroyed his house. His damages are $11,818.40, plus interest of $4712.73.

From these facts the trial court concluded: (1) The defendants Corte and Weed, acting as employees of the defendant Schumann within the scope of their employment, were negligent in the inspection and use of Schumann's salamander. (2) The negligence of the defendants Corte and Weed was the proximate cause of the fire which destroyed the Schurgast house; (3) Schurgast is entitled to recover of the defendants damages in the amount of $11,818.40, plus interest of $4712.73.

The court's conclusions are to be tested by the finding and not by the evidence. *Craig* v. *Dunleavy,* 154 Conn. 100, 105, 221 A.2d 855. "The conclusions reached by the court must stand unless they are legally or logically inconsistent with the facts found or unless they involve the application of some erroneous rule of law. *Johnston Jewels, Ltd.* v. *Leonard,* 156 Conn. 75, 79, 239 A.2d 500." *Pigeon* v. *Hatheway,* 156 Conn. 175, 182, 239 A.2d 523. The defendants assign error in the conclusions reached by the court and contend that the conclusion of negligence is not based on any positive finding of subordinate fact and that it cannot be sustained by resort to any of the evidentiary doctrines of circumstantial evidence, reasonable inference, or res ipsa loquitur.

The trial court did not indicate upon which count of the complaint it rendered its judgment. As noted

above, the second count of the original complaint did not state a cause of action, and the third count was withdrawn. The judgment obviously was based on the first count, wherein Schurgast alleged specific acts of negligence by the defendants. There was no direct evidence of any particular negligent act by any of the defendants, and the trial court made no finding to that effect. If the case is a proper one for the application of the doctrine of res ipsa loquitur, the plaintiff, by pleading the particular cause of the accident, in no way loses his right to rely thereon. *Briganti* v. *Connecticut Co.,* 119 Conn. 316, 319, 175 A. 679; *Jump* v. *Ensign-Bickford Co.,* 117 Conn. 110, 122, 167 A. 90; *Firszt* v. *Capitol Park Realty Co.,* 98 Conn. 627, 642, 643, 120 A. 300. We have frequently stated the three conditions under which the doctrine might apply: (1) The situation, condition, or apparatus causing the injury must be such that in the ordinary course of events no injury would result unless from a careless construction, inspection or user. (2) Both inspection and user must have been at the time of the injury in the control of the party charged with neglect. (3) The injurious occurrence or condition must have happened irrespective of any voluntary action at the time by the party injured. *Briganti* v. *Connecticut Co.,* supra, 320. "[T]he doctrine of *res ipsa loquitur* is a rule of common sense and not a rule of law which dispenses with proof of negligence. It is a convenient formula for saying that a plaintiff may, in some cases, sustain the burden of proving that the defendant was more probably negligent than not, by showing how the accident occurred, without offering any evidence to show why it occurred." *Stebel* v. *Connecticut Co.,* 90 Conn. 24, 26, 96 A. 171; *Lowman* v. *Housing Authority,* 150 Conn. 665, 669, 192 A.2d 883.

In the instant case, the court found that ordinarily a salamander stove which is in good condition will not start a fire except as the result of a careless inspection or user; that on the morning in question inspection and use of the stove were within the control of Schumann and his employees, Weed and Corte; that Schurgast had nothing to do with the fire which destroyed his house; that, when Corte and Weed arrived in the kitchen after smelling smoke, the floor surrounding the salamander stove was in flames; and that, prior to the igniting of the floor surrounding the salamander, the only fire in the house was that in the salamander. "Where common experience has demonstrated that no injury would ordinarily result from a situation, condition or apparatus unless there was careless construction, inspection or user, and the construction, inspection and user were all in the control of the party charged with neglect, no voluntary action of the party injured being involved, common sense permits an inference of negligence from proof of the injury and the physical agency inflicting it, without requiring proof of facts pointing to the responsible human cause. The result is simply that such proof, without proof of further facts tending to show negligence, satisfies the plaintiff's duty of producing evidence sufficient to permit the trier, whether court or jury, to draw an inference of negligence. *Ruerat* v. *Stevens,* 113 Conn. 333, 337, 155 A. 219. The doctrine permits, but does not compel, such an inference. *Fogarty* v. *M. J. Beuchler & Son, Inc.,* 124 Conn. 325, 330, 199 A. 550. The doctrine has no evidential force, does not shift the burden of proof and does not give rise to a presumption. *Ryan* v. *George L. Lilley Co.,* 121 Conn. 26, 30, 183 A. 2. It is but a specific application of the general prin-

ciple that negligence can be proved by circumstantial evidence." *Lowman* v. *Housing Authority,* supra, 670.

Although the trial court did not mention the doctrine of res ipsa loquitur by name, it is obvious that it did draw the inference of negligence which it was permitted to do. We have held repeatedly that in no case need specific reference to the doctrine by name be made in a charge to a jury. *Ryan* v. *George L. Lilley Co.,* supra, 30; *Jump* v. *Ensign-Bickford Co.,* 117 Conn. 110, 120, 167 A. 90; *Firszt* v. *Capitol Park Realty Co.,* 98 Conn. 627, 644, 120 A. 300. This is equally true in a case tried to the court, although it would be desirable for the trial court to be specific. The conclusions of the trial court as to negligence and proximate cause cannot be disturbed.

The defendants assign error in two rulings on evidence. In the first of these, the defendants objected to the admission in evidence of certain reports of fire engine companies as records kept in the regular course of business on the grounds that the necessary basis for admission as business entries had not been established and that the reports contained hearsay statements. The finding wherein the claimed erroneous ruling is recited was not made in accordance with Practice Book § 648. The obvious purpose of the rule is to permit a proper review by this court of the action of the trial court. A ruling on evidence must be tested by the finding. If it is claimed to be erroneous, the finding must contain facts sufficient to disclose the error. Practice Book § 648; *Grievance Committee* v. *Dacey,* 154 Conn. 129, 150, 222 A.2d 339; *Morgillo* v. *Evergreen Cemetery Assn.,* 152 Conn. 169, 175, 205 A.2d 368. The finding failed to disclose facts

from which the materiality and the correctness of the ruling may be determined. *Casalo v. Claro,* 147 Conn. 625, 629, 165 A.2d 153. This inadequacy of the finding precludes our consideration of this assignment of error.

The defendant Weed, called as a witness by Schurgast, testified that inspection was made of the salamander before it was lit and that bricks were placed underneath it. Schurgast then offered in evidence a statement signed by Weed concerning his activities on the day of the fire, in which statement no mention was made of an inspection of the stove or the placing of bricks underneath it. It was offered for the purpose of attacking the credibility of the witness. The defendants objected and took exception on the ground that Schurgast was seeking to establish a fact by the absence of something in the statement and on the further ground that it was not contradictory of Weed's testimony and was not an admission. The statement was inconsistent with the testimony of the witness and was properly admitted in evidence to impeach his testimony. *Culetsu v. Dix,* 149 Conn. 456, 460, 181 A.2d 116; *Sears v. Curtis,* 147 Conn. 311, 315, 160 A.2d 742. The ruling of the trial court was correct.

We conclude therefore that there is no error on the defendants' appeal from the judgment of the court on the original action.

## II

We turn now to the appeal of the third-party defendant, the Aetna Insurance Company. On February 4, 1966, the trial court granted the motion of Schumann, as a third-party plaintiff, to serve a writ, summons and complaint on Aetna. The third-party complaint alleged the purchase by Schu-

mann of a manufacturers' and contractors' liability policy from Aetna; that this policy was in effect at the time the Schurgast house was destroyed by fire; that, as a result of the fire, Schumann had been sued by Schurgast; that the policy in question covered this loss; and that, despite demand made upon it, Aetna has refused to defend the suit against Schumann, has denied liability for the loss under the coverage of the policy and has refused to pay any judgment which might be rendered against Schumann in the suit against him by Schurgast. In the third-party action, Schumann sought a declaratory judgment declaring (1) that Aetna must defend the suit brought by Schurgast; (2) that the policy covered the events described; and (3) that Aetna must pay any judgment obtained by Schurgast against Schumann up to the limits of the policy. In its answer, Aetna admitted its refusal to defend and its denial of coverage. It also set forth five special defenses. The trial court found the issues on the third-party complaint in favor of Schumann and rendered a declaratory judgment in substantial compliance with the claims for relief in the third-party complaint.

The dispute between the parties involves two provisions of the policy. The first concerns exclusion (1), which provides that coverage for injury to or destruction of property does not extend to "property in the care, custody or control of the insured or property as to which the insured for any purpose is exercising physical control," and raises the questions of the meaning of this quoted language and whether it applies to the events and circumstances involved in the destruction by fire of the Schurgast house. The second provision in the policy which the parties seek to have clarified is

the meaning and effect of condition 13, a "no action" clause, which provides: "No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company." Aetna contends that, by virtue of this condition in the policy, it could not be impleaded in this action unless a final determination already existed against the insured.

Section 52-102a of the General Statutes permits a defendant in any civil action, on obtaining permission of the court, to implead "a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him." This language was taken verbatim from Rule 14 (a) of the Federal Rules of Civil Procedure. In a recent case, we said that the purpose of § 52-102a, like that of Rule 14 (a), is to obviate the multiplicity of actions, and we held that, "as in the case of Rule 14 (a), when § 52-102a permits the impleading of one who 'is or may be liable' for the claim sued on, the purpose and effect of the quoted words is to accelerate the accrual of the right to assert a claim against the impleaded person." *Senior* v. *Hope,* 156 Conn. 92, 96, 239 A.2d 486. Aetna urges, however, that Schumann, the third-party plaintiff, had no standing to institute an action against it since there was no final judgment outstanding against the third-party plaintiff after actual trial, nor was there any written agreement of damages executed by the original plaintiff and the third-party defendant as required by condition 13 of the policy.

With the exception of one early decision, the right of an insured to implead his insurer into an action brought by the injured party has been sustained under Federal Rule 14 (a). *Schevling* v. *Johnson,* 122 F. Sup. 87, aff'd, 213 F.2d 959; *Vaughn* v. *United States,* 225 F. Sup. 890; Barron and Holtzoff, Federal Practice & Procedure § 426.2; 3 Moore, Federal Practice (2d Ed.), ¶ 14.12; see Wright, "Joinder of Claims and Parties under Modern Pleading Rules," 36 Minn. L. Rev. 580, 615. The federal courts have permitted impleader of an insurance company notwithstanding a "no action" clause which prohibits suit against the company until judgment has been rendered against the insured. A leading federal case held that the impleader rule "was promulgated not only for the purpose of serving litigants but as a wise exposition of public policy. The object of the rule was to facilitate litigation, to save costs, to bring all of the litigants into one proceeding, and to dispose of an entire matter without the expense of many suits and many trials. The no-action provision of the policy is neither helpful to the third-party defendant, to the courts, nor generally is it in the interest of the public welfare. Its object is to put weights on the already too slow feet of justice." *Jordan* v. *Stephens,* 7 F.R.D. 140, 142; *Vaughan* v. *United States,* supra, 891.

This statement appears to represent what is now a settled view of the federal courts. "Nor is any different result to be reached by claiming that the right of the insurer not to be impleaded is a 'substantive' right which must be respected in federal court in diversity cases. It has been pointed out that the 'no action' clause, reasonably construed, means merely that there may be no recovery against the

insurer except on the basis of a final judgment against the insured. This right is not inhibited by Rule 14, which merely provides for determination of the insured's claim against his insurer in the tort action against him, but does not result in a judgment against the company except as part of the judgment against the insured." Barron and Holtzoff, Federal Practice & Procedure § 426.2, p. 690.

In a recent Massachusetts case, the insured, who was being sued for damages by a guest in his automobile, brought a third-party action against his automobile liability insurer, alleging that the insurer, in breach of its obligation under the policy, had refused to defend the action against the insured. The Massachusetts statute, which is similar to our § 52-102a, provides in pertinent part: "[A] defendant . . . may, as third-party plaintiff, enter a writ and have served a summons and third-party declaration upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him." Mass. Gen. Laws, c. 231 § 4B. The insurer claimed that it could not be impleaded because of a policy provision which stated: "No action shall lie against the corporation unless . . . the amount of the insured's obligation to pay shall have been finally determined . . . . [N]or shall the corporation be impleaded by the insured or his legal representative." The court held: "If given effect, such a provision would nullify the intent of the Legislature in enacting the impleader statute; for the purpose of the statute is to avoid multiplicity of actions. The Corporation cannot by means of a contract between the parties limit the court's right to determine whether the Corporation is liable to the insured for a claim

against the insured until there has been a final judgment on that claim. . . . Nor can the parties prevent prosecution of the cause by agreeing that the Corporation cannot be impleaded." *Jenkins* v. *General Accident Fire & Life Assurance Corporation, Ltd.,* 349 Mass. 699, 701, 212 N.E.2d 464.

Aetna also urges that, since the original contract of insurance was dated November 1, 1959, the trial court, by its decision, gave retrospective effect to General Statutes § 52-102a, which was adopted in 1965. "It is a rule of construction that legislation is not to be applied retroactively unless the legislature clearly expresses such an intent. *Michaud* v. *Fitzryk,* 148 Conn. 447, 448, 171 A.2d 397; *E. M. Loew's Enterprises, Inc.* v. *International Alliance,* 127 Conn. 415, 418, 17 A.2d 525; *Massa* v. *Nastri,* 125 Conn. 144, 146, 3 A.2d 839; *Skinner* v. *Watson,* 35 Conn. 124, 126. The rule is not applied, however, to legislation which is general in its terms and affects only matters of procedure. Such legislation is presumed to have been intended to be applicable to all actions, whether pending or not, in the absence of any expressed intention to the contrary. *E. M. Loew's Enterprises, Inc.* v. *International Alliance,* supra; *Neilson* v. *Perkins,* 86 Conn. 425, 428, 85 A. 686." *Lavieri* v. *Ulysses,* 149 Conn. 396, 401, 180 A.2d 632. The purpose and effect of the statute is to accelerate the accrual of the right to assert a claim against the impleaded person, and it does not affect his substantive rights. *Senior* v. *Hope,* 156 Conn. 92, 97, 239 A.2d 486; see *Petersen* v. *Falzarano,* 6 N.J. 447, 455, 79 A.2d 50; 3 Moore, op. cit., ¶ 14.08. The statute is procedural in nature and applies to pending actions.

On January 11, 1960, the day of the fire, there was in force a manufacturers' and contractors' liability

policy issued to Schumann by Aetna, the pertinent provisions of which are printed in the footnote.[1]

When Schurgast brought the original action, Schumann requested Aetna to defend the action, but Aetna refused on the ground that liability for the damage to the Schurgast property was excluded under the terms of the policy. Later Schumann brought this third-party action against Aetna.

Under the terms of the policy, Aetna agreed to

[1] "[INSURING AGREEMENTS] Coverage B—Property Damage Liability. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the hazards hereinafter defined."

"DEFINITION OF HAZARDS

"Division 1—Premises—Operations. The ownership, maintenance or use of premises and all operations."

"DESCRIPTION OF HAZARDS

"The rating classifications under the Description of Hazards do not modify the exclusions or other terms of this Policy.

"1. Premises—Operations

"Carpentry in the construction of detached private residences for occupancy by one or two families and private garages in connection therewith"

"EXCLUSIONS

"This policy does not apply: . . .

"(d) under divisions 1, 2 and 3 of the Definition of Hazards, to liability assumed by the insured under any contract or agreement; . . .

"(l) under coverages B and D, to injury to or destruction of . . .

"(3) . . . [to] property in the care, custody or control of the insured or property as to which the insured for any purpose is exercising physical control . . . ."

"CONDITIONS

"(Unless otherwise noted, the conditions apply to all coverages) . . .

"(13) Action Against Company—Coverages A, B and D.

"No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company."

"defend any suit against the insured alleging such injury, . . . and seeking damages on account thereof, even if such suit is groundless, false or fraudulent." The determination of the question whether Aetna had a duty to defend the original action brought by Schurgast against Schumann depends on whether the complaint in that action stated facts which appear to bring Schurgast's claim of damage within the policy coverage. *Missionaries of the Company of Mary, Inc.* v. *Aetna Casualty & Surety Co.*, 155 Conn. 104, 110, 230 A.2d 21. The first count of the complaint alleged that Schurgast entered into a written contract with Schumann under the terms of which Schumann was to construct a one-family, frame house for Schurgast and that Corte and Weed, employees of Schumann, while working on the construction of the house, negligently caused a fire which destroyed the house. This count of the complaint, on its face, appeared to bring the claim within the provisions of the policy which provided coverage for damages because of injury to or destruction of property caused by accident and arising out of the hazards defined, namely, the use of premises and all operations pertaining to the construction of a one-family house. Nothing alleged in this count would appear to indicate that the factual situation set forth therein is covered by exclusion (1) of the policy. The second count attempted to plead the essential elements of the doctrine of res ipsa loquitur but failed to allege negligence. It recited, among other facts, that the inspection and user of the premises and the salamander stove were in the exclusive control of the defendants. The third count sounded in contract and, obviously, did not state a cause of action which would bring it within the coverage of the policy. Whether the second

count appeared to do so we need not determine.

"Where a complaint in an action against one to whom a policy of liability insurance has been issued states different causes of action or theories of recovery against the insured, and one such cause is within the coverage of the policy but others may not be within such coverage, the insurer is bound to defend with respect to those which, if proved, are within the coverage." 14 Couch, Insurance (2d Ed.) § 51:43; *Sims* v. *Illinois National Casualty Co.,* 43 Ill. App. 2d, 184, 195, 193 N.E.2d 123; *Rom* v. *Gephart,* 30 Ill. App. 2d 199, 207, 173 N.E.2d 828; *Canadian Radium & Uranium Corporation* v. *Indemnity Ins. Co.,* 342 Ill. App. 456, 461, 97 N.E.2d 132; *Christian* v. *Royal Ins. Co.,* 185 Minn. 180, 182, 240 N.W. 365; see note, 50 A.L.R.2d 458, 506 § 24.

The duty of Aetna to defend the action was clear, and its failure to do so was a breach of its duty to Schumann. In spite of this, Aetna urges that the damage to the Schurgast property arose under circumstances which were within the exclusion clause recited in the policy and that the trial court was in error in concluding that the policy in question covered the events described in the third-party complaint. It is not necesary for us to consider this question. When the insurer is requested by its insured to defend, the insurer must exercise its judgment as to what is required of it under its contractual obligation to its insured. "It could either refuse to defend or it could defend under a reservation of its right to contest coverage under the various avenues which would subsequently be open to it for that purpose. *Commercial Contractors Corporation* v. *American Ins. Co.,* 152 Conn. 31, 202 A.2d 498; *Manthey* v. *American Automobile Ins. Co.,* 127 Conn. 516, 520, 18 A.2d 397; *Basta* v. *United*

*States Fidelity & Guaranty Co.*, 107 Conn. 446, 450, 140 A. 816." *Missionaries of the Company of Mary, Inc.* v. *Aetna Casualty & Surety Co.*, 155 Conn. 104, 113, 230 A.2d 21. In the instant case, Aetna chose to refuse to defend and, in so doing, breached its contract with Schumann. It is therefore under a duty to pay the judgment obtained against Schumann by Schurgast up to the limit of liability fixed by its policy. *Missionaries of the Company of Mary, Inc.* v. *Aetna Casualty & Surety Co.*, supra, 114.

Since we do not determine whether, as to the third-party complaint, the exclusion clause in the policy covered the events described, the judgment of the trial court must be corrected.

There is no error on the defendants' appeal in the original action; there is error in part on the appeal of the third-party defendant in the third-party action, the judgment is set aside, and the case is remanded with direction to render judgment declaring that (1) the defendant, the Aetna Insurance Company, was obligated to defend the lawsuit brought against Roger M. Schumann by Anselm Schurgast and (2) the defendant, the Aetna Insurance Company, is under a duty to pay the judgment obtained by Anselm Schurgast against Roger M. Schumann within the limit of liability fixed by its policy.

In this opinion the other judges concurred.