[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT (#117.00)
This third-party defendant's motion for summary judgment raises the following issues:
 (1) Whether the third-party defendant may attack the legal sufficiency of the third-party complaint by means of a summary judgment motion.
 (2) Whether a party against whom a default has entered may plead further without filing a motion to reopen. CT Page 3128
 (3) Whether the third-party defendant is entitled to summary judgment against the third-party plaintiff insurer, where the insurer's subrogation rights may be unripe, as the insurer has not yet made any payment on the first-party complaint of its insured.
The underlying action in this case is a suit against the Valley Forge Insurance Co. by first-party plaintiff Louise Meyer. By way of a complaint filed November 30, 1989, Meyer alleges that she is a policyholder of a contract of homeowner's insurance with a first-party defendant Valley Forge. After allegedly negligent acts by third-party defendant R R Pool 
Spa, Inc., the plaintiff's swimming pool was allegedly rendered unsafe and unrepairable. The plaintiff made a claim under the insurance policy for the resultant damages, and the defendant Valley Forge denied coverage. This lawsuit resulted from Valley Forge's denial of coverage. Valley Forge has impleaded third-party defendant R R, alleging that R R "is or may be liable for all or part" of plaintiff Meyer's claims (Motion to Implead #103.00, January 26, 1990).
The third-party defendant R R has moved for summary judgment, arguing that, inasmuch as no judgment has entered against Valley Forge, the insurer's subrogation rights have not yet ripened, and therefore R R is entitled as a matter of law to judgment on the third-party complaint.
The parties have each filed memoranda in support of their positions. The pleadings were closed by the third-party plaintiff's reply to the third-party defendant's special defense (#119, January 7, 1991).
"Summary judgment procedure is designed to dispose of actions in which there is not genuine issue as to any material fact," Dougherty v. Graham, 161 Conn. 248, 250 (1971). The party moving for summary judgment "must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." Plouffe v. New York, N.H. H.R. Co., 160 Conn. 482, 487
(1971). Here, the third-party defendant has shown the absence of any genuine issue of material fact relating to its claim of law, but not that it is entitled to judgment under the applicable principles of substantive law. Relying on the general principle that an insurer's subrogation rights do not accrue until a judgment is secured by the insured, see, e.g., C.J.S., Insurance 1209 and cases cited therein, the defendant R R argues that Valley Forge's third-party complaint is legally insufficient prior to a judgment against Valley Forge in the underlying action. CT Page 3129
Two preliminary procedural questions must be considered. First, the use of the summary judgment motion to challenge the legal sufficiency of the complaint may appear irregular. The fundamental rule is that a plaintiff's recovery is limited to the allegations of the complaint, Verraster v. Tynan, 152 Conn. 645,648 (1965). The courts have tolerated the use of a summary judgment motion in the place of a motion to strike, where the pleadings are closed. See, e.g., Boucher Agency, Inc. v. Zimmer, 160 Conn. 404, 409 (1971) ("The proper way to have tested the legal sufficiency of the complaint would have been by [motion to strike] before the pleadings were closed or, after an answer had been filed, by a motion for summary judgment. . ."); Brill v. Ulrey, 159 Conn. 371, 374 (1970) (" [F]ailure by the defendants to demur to any portion of the complaint does not prevent them from claiming that the executors had no cause of action . . ."). A given complaint can be evaluated for legal sufficiency (on a motion to strike) or on summary judgment grounds, i.e., whether a genuine issue of material fact exists, and, if no such issue exits, whether the movant is then entitled to judgment as a matter of law. In the latter case, if the allegations upon which the motion rests are proven and nonetheless judgment is not merited, the legal insufficiency of the complaint requires the denial of summary judgment.
A second procedural question in this case arises from the granting of a default against third-party defendant R R by the court clerk for failure to plead (Motion for Default, December 19, 1990). The earlier procedure, whereby a party in default was required to file a motion to reopen before further pleadings were allowed, has been streamlined by Connecticut Practice Book 363A (effective October 1, 1990):
 363A. Where Defendant Is in Default for Failure to Plead.
 Where a defendant is in default for failure to plead pursuant to Section 114, the plaintiff may file a written motion for default which shall be acted on by the clerk upon filing, without placement on the short calendar.
 If a party who has been defaulted under this section files an answer before a judgment upon the default has been rendered by the court, the clerk shall automatically set aside the default.
This provision was in effect when the default entered on December 19, 1990. Thus, since the third-party defendant R R CT Page 3130 filed its answer (#113, January 3, 1990) before a judgment was entered on the default, the automatic set-aside provision was triggered and the further pleadings are appropriate.
Consequently, the sole issue remaining is whether the third-party defendant's subrogation argument accurately characterizes the validity of the impleader at this stage.
Third-party practice is procedural and does not create, abridge, enlarge or modify the substantive rights of the parties. Savings Bank of Manchester v. Kane, 35 Conn. Sup. 82,88 (Ct. Com. Pl. 1978). But where there is a substantive right, the impleader statute has the purpose and effect to "accelerate the accrual of the right to assert a claim against the impleaded person, and it does not affect his substantive rights. . ." Schurgast v. Schurmann, 156 Conn. 471, 487 (1968). Under the plain language and the case law construing C.G.S. 52-102a, if judgment for Meyer on the insurance contract were entered, the impleader statute serves to accelerate the accrual of the insurer's contingent right and to require the denial of the defendant R R's motion.
While it does not appear that this precise issue has been decided by a Connecticut court, there are analogous decisions which support the denial of summary judgment in this case. In Johnson v. Carriage Hill of Bristol, Inc., 29 Conn. Sup. 169,170-171 (Sup.Ct. 1971), the general purpose of the impleader statute was relied on to overrule a demurrer on the same ground as the present motion:
 "Every complaint in an action at law must show a cause of action; that is, it must show a present right to have the relief claimed. If the right to have the relief claimed has not yet come into existence, then the action is prematurely brought." Dickerman v. New York, N.H. H.R. Co., 72 Conn. 271, 275. In other words, at common law a cause of action must have "accrued" to the plaintiff before he could bring his action. Id.
 This principle was applicable to actions at law only; it did not apply to actions in equity, where the plaintiff could institute an action even though he has sustained no legal damage when the action was instituted. See Woodbridge v. Pratt Whitney Co., 69 Conn. 304, 334. In areas other than equitable actions, important exceptions to the common-law principle have been made by statute. Thus, in CT Page 3131 1893 the legislature authorized actions to quiet title even though the defendant had made no attempt to enforce the claim alleged to be adverse to that of the plaintiff. The constitutionality of this legislation was upheld in Dawson v. Orange, 78 Conn. 96, 100, where the court characterized the action as "a novel mode of judicial procedure." The action could, of course, not have been instituted at common law, since the plaintiff's right to bring the suit would not have "accrued" at common law until the adverse claimant had invaded a right of the plaintiff. In 1921, this "novel judicial procedure" was extended, by the Declaratory Judgment Act, to other actions seeking declarations as to "rights and other legal relations." Public Acts 1921, c. 258 (as amended, General Statutes 52-29). The constitutionality of that act was determined in Braman v. Babcock, 98 Conn. 549, 557.
 Hence, when the legislature enacted General Statutes 52-102a in 1965, the Supreme Court had judicially affirmed that the General Assembly can constitutionally authorize a plaintiff to institute an action which would have been premature at common law. Section 52-102a had as its "purpose and effect. . .to accelerate the accrual of the right to assert a claim against the impleaded person, and it does not affect his substantive rights. . . . The statute is procedural in nature. . ." Schurgast v. Schumann, 156 Conn. 471, 487. By Schurgast, the Supreme Court established (a) that the common law rule requiring allegations of an existing right to relief before an action is instituted is a procedural rule and not a substantive rule, and (b) that 52-102a has accelerated the accrual of the procedural right to institute an action. In short, under 52-102a, the right to institute an action is no longer dependent upon the present existence of a right to relief.
 For the foregoing reasons, the indemnitor's claim that there is a "substantive requirement" that the indemnitee must plead the prior judgment must be overruled.
Id. CT Page 3132
The same principle was affirmed in Gannuscio v. Albee,29 Conn. Sup. 189, 192 (Sup.Ct. 1971) (Connecticut General Statutes 52-102a constitutionally changed the common-law rule that a plaintiff has to show a present right to relief, and makes it unnecessary for the plaintiff in a third-party action to show such present right, regardless of the type of indemnification claimed.). First New Haven National Bank v. Rosenberg, 33 Conn. Sup. 1 (Sup.Ct. 1975) (Right to implead third-party defendant exists even though his ultimate liability to impleading plaintiff has not been determined, where impleading plaintiff alleges facts supporting proof that third-party defendant may be liable).
The fact that the main action might sound in contract and the third-party action in common-law indemnification does not preclude impleader. See, e.g., White v. Land Homes Corp.,251 Md. 603, 248 A.2d 159, 162 (1968) ("[I]mpleader is authorized to bring in a third party who would necessarily be liable over to the defendant for all or any part of the plaintiff's recovery, whether by way of indemnity, subrogation, contribution, express or implied warranty, or otherwise.")
A New York case based on similar facts, and construing a similar impleader statute (McKinney's N.Y. CPLR 1007) found that, absent an express prohibition on accelerating subrogation rights in the policy, no third party defendant would be heard to attack the impleader. In Cassell Vacation Homes, Inc. v. Commercial Union Insurance Companies, 121 App.Div.2d 674,504 N.Y.S.2d 443 (1986), an insured brought an action against the insurer for property damage and the insurer impleaded the allegedly negligent plumbers who were the cause of the damage. The trial court granted a motion to dismiss on the same grounds asserted in the instant case by R R, i.e., the unripeness of the insurer's subrogation rights. The Appellate Division reversed, holding as follows:
 We find that the impleader is proper, and therefore, reverse. CPLR 1007 permits a defendant to impled a person who is not a party to the action "who is or may be liable" for all or part of the claim. Therefore, absent a contractual limitation, the defendants would have a right to implead [the third-party defendant] . . . .
 "The covenant in the policy [making subrogation contingent on payment of a claim] was for the benefit of the assured. In the assured raises no objection, a third party CT Page 3133 which possibly caused the loss should not be allowed to benefit by its terms, and thereby successfully insulate itself from liability for its acts.
 "The statute contemplates the avoidance of multiplicity of actions. Since the courts have a right to control their calendars, and, under the statute, may in a proper case exercise their discretion as warranted, the court properly exercised its power."
Id. at 444 (quoting Consolidated Edison Co. v. Royal Indemnity Co., 41 App.Div.2d 37, 40, 340 N.Y.S.2d 991).
"The right of subrogation is a creature of equity, applicable where one person is required to pay a debt for which another is primarily responsible, and which the latter should in equity discharge. . ." American Surety Co. v. Bank of California,133 F.2d 160, 162 (9th Cir. 1943).
Both the principles of equity and the impleader statute support the right of Valley Forge to implead the alleged tortfeasor in this situation. The same statute has been described by the Supreme Court as intended "to obviate the multiplicity of actions. . ." Schurgast, 156 Conn. at 484. (citing Senior v. Hope, 156 Conn. 92, 96 (1968)). There is no reason to attribute a different purpose to the statute where it is used by an insurer than where it is used by an insured, as in Schurgast. "The object of the [impleader] rule was to facilitate litigation, to save costs, to bring all of the litigants into one proceeding, and to dispose of an entire matter without the expense of many suits and many trials. " Schurgast, 156 Conn. at 485. (quoting Jordan v. Stephens,7 F.R.D. 140, 142 (W.D. Mo. 1945)).
Accordingly, the third-party defendant's motion for summary judgment should be denied, as the impleader is proper as a matter of law and equity.
MAIOCCO, JUDGE