[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED JANUARY 12, 1995
On July 13, 1993, the plaintiff, Barbara Blackburn, filed a nine count complaint seeking, inter alia, damages for an alleged contamination of her well water supply.
In the first count, the plaintiff states that her property, located at 44 Backus Avenue in Danbury, Connecticut, is served by a private on-site well that serves as a source of water for both drinking and domestic use. The plaintiff further states that the defendant, Miller-Stephenson Chemical Company, Inc. ("defendant"), owns and operates a facility located at 55 Backus Avenue in Danbury, Connecticut. According to the plaintiff, the defendant packages and distributes chemicals at its facility, an activity that includes packaging volatile organic compounds. The plaintiff alleges that the Connecticut Department of Environmental Protection ("DEP") conducted soil samples CT Page 992 at the defendant's facility which indicated that the soil was contaminated with five different compounds, including the compound benzene, in excess of state standards and that groundwater samples taken at the defendant's facility in 1989 revealed that the water contained three contaminants in excess of state standards. The plaintiff alleges that well water samples taken at her property indicated the presence of five contaminants. The plaintiff alleges that two of these contaminants, trichloroethane and benzene, were present in amounts that exceeded state standards. The plaintiff then alleges that on April 16, 1993, the Commission of Health and Services determined that the benzene pollution of the plaintiffs well water supply could reasonably be expected to create an unacceptable risk of injury to the health or safety of those using her well as a source of drinking water. As a result of the contamination found at the defendant's facility and the plaintiff's water supply, the plaintiff alleges: (1) that the defendant was ordered to provide bottled water to the plaintiff as a short-term drinking water supply, and to extend public water lines to her property as a long-term measure; (2) that plaintiff's tenant, upon notification of the well water contamination, vacated the premises and the plaintiff is unable to rent her property to another tenant due to not only the health hazards posed by the contamination, but also due to the guidelines for domestic use imposed by the Department of Health Services; (3) that the market value of her property has permanently diminished; and, (4) that she "may incur significant costs in investigating, containing, removing or otherwise initiating the effects of the contamination at her property." Therefore, the plaintiff alleges negligence in count one against the defendant in that the defendant, as owner and operator of the facility, had a duty to use its facility in a reasonable manner and that the defendant knew, or in the exercise of reasonable care should have known, that its activities would result in soil and groundwater contamination.
The plaintiff alleges in the second count that the defendant's actions violated General Statutes, Secs.22a-427, 22a-430, and Sec. 22a-454, and by violating such sections, the defendant was negligent per se. CT Page 993
Counts three through five allege common law actions in res ispa loquitur, nuisance and trespass, respectively. The sixth count alleges strict liability based on an ultrahazardous activity.
Counts seven through nine allege violations of General Statutes, Secs. 22a-451, 22a-452 and 22a-16, respectively.
On August 19, 1993, the defendant filed a motion to strike the second, third, fifth, sixth, seventh, eighth and ninth counts of the plaintiff's complaint on the grounds that: (1) counts two and three do not set forth legal causes of actions; (2) count five is barred pursuant to Connecticut law; (3) the use of volatile organic compounds in the packaging and distribution of chemicals is not an ultrahazardous activity as alleged in count six; (4) section 22a-451 does not provide for a private cause of action as alleged in count seven; (5) plaintiff is not entitled to relief under section 22a-452
because she has not alleged that she has incurred response costs in count eight; and, (6) section 22a-16
does not apply to plaintiff's claim as alleged in count nine.
The defendant filed a memorandum of law in support of its motion. The plaintiff then filed a memorandum of law in opposition to the defendant's motion.[1]
Thereafter, the defendant filed a memorandum of law in response to the plaintiff's opposition memorandum.
The purpose of the motion to strike is to challenge the legal sufficiency of the allegations of any complaint.Gordon v. Bridgeport Housing Authority,208 Conn. 161 170, 544 A.2d 1185 (1988). In judging the motion, it does not matter whether the party can prove the allegations at trial. Levine v. Bess and Paul SigelHebrew Academy of Greater Hartford, Inc.,39 Conn. Sup. 129, 131, 471 A.2d 679 (Super.Ct., 1983). The motion admits all facts well pleaded, but does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings. Mingachos v. CBS.Inc., 196 Conn. 91, 108, 491 A.2d 368 (1985). The sole inquiry is whether the plaintiff's allegations, if proved, CT Page 994 state a cause of action. Id.
I. The Second and Third Counts
In the second count, the plaintiff incorporates the factual allegations as set forth in the first count of her complaint and further alleges, inter alia, that (1) the defendant, by discharging volatile organic compounds at its facility, violated section 22a-427 by causing pollution and discharging wastes in violation of Chapter 446k of the General Statutes; (2) the defendant created or maintained a discharge into the waters of this state without a permit in violation of section22a-430; and, (3) the defendant operated a hazardous waste facility or disposed of hazardous waste at its facility in violation of section 22a-454. The plaintiff further alleges that she is a member of the class of persons that the above statutes were designed to protect, and that the defendant's actions in violating those statutes constitutes negligence per se and proximately caused the contamination of her property.
 "The doctrine of negligence per se serves to superimpose a legislatively prescribed standard of care on the general standard of care." [Citations omitted.] "Where a statute is designed to protect persons against injury, one who has, as a result of its violation, suffered such an injury as the statute was intended to guard against has a good ground of recovery." [Citations omitted.] That principle of law sets forth two conditions which must coexist before statutory negligence can be actionable. First, the plaintiff must be within the class of persons protected by the statute. [Citations omitted.] Second, the injury must be of the type which the statute was intended to prevent. [Citations omitted.]
Gore v. People's Savings Bank, 35 Conn. App. 126, 130,131 (1994).
In its supporting memorandum, the defendant argues that negligence per se is not a distinct cause of action but a legislative standard derived from traditional tort principles. Therefore, the defendant argues that the second count of the plaintiffs complaint does CT Page 995 not set forth a cognizable claim and should be stricken.
The plaintiff counters that negligence per se is a valid, independent cause of action and that the defendant's negligent acts in contaminating her land as alleged in the first count are different from the statutory violations as alleged in the second count. Therefore, the plaintiff argues that she has properly alleged separate causes of action.
In the present case, the plaintiff has alleged that the defendant has violated several statutory sections and has further alleged that those violations caused the contamination of her property. "If a plaintiff alleges that a statute, ordinance or regulation has been violated, thereby relying on negligence per se, and also alleges that there is a causal connection between such negligence and the injuries sustained, a cause of action has been stated." Commercial Union Ins. Co. v.Frank Perrotti Sons. Inc., 20 Conn. App. 253, 258,566 A.2d 431 (1989). Therefore, the plaintiff has stated a cause of action based on negligence per se.
Turning to the allegations as set forth in the third count, the plaintiff alleges negligence based on the of res ipsa loquitur in that contamination would ordinarily not have occurred at defendant's facility without careless construction, inspection, or use of materials and that construction, inspection, and use of materials at the defendant's facility were all in the control of the defendant. Based on the foregoing, the plaintiff alleges that the defendant is liable in negligence for her damages.
The doctrine of res ipsa loquitur is predicated on the following three elements:
 (1) The situation, condition, or apparatus causing the injury must be such that in the ordinary course of events no injury would result unless from a careless construction, inspection or user. (2) Both inspection and user must have been at the time of the injury in the control of the party charged with neglect. (3) The injurious occurrence or condition CT Page 996 must have happened irrespective of any voluntary action at the time by the party injured.
Malvicini v. Stratfield Motor Hotel, Inc., 206 Conn. 439,443, 538 A.2d 690 (1988), quoting Schurgast v. Schumann,156 Conn. 471, 479-81, 242 A.2d 695 (1968).
 [T]he doctrine of res ipsa loquitur is a rule of common sense and not a rule of law which dispenses with proof of negligence. It is a convenient formula for saying that a plaintiff may, in some cases, sustain the burden of proving that the defendant was more probably negligent than not, by showing how the accident occurred, without offering any evidence to show why it occurred.'
Malvicini v. Stratfield Motor Hotel, Inc., supra, 442. "The doctrine has no evidential force, does not shift the burden of proof and does not give rise to a presumption. [Citation omitted.] It is but a specific application of the general principle that negligence can be proved by circumstantial evidence." Id.
The defendant argues that the third count of the plaintiffs complaint should be stricken because it fails to allege a legal cause of action and only asserts a claim for relief based upon a "procedural device."
Conversely, the plaintiff argues that the third count alleges facts separate and distinct from those facts alleging negligence as set forth in the first count. Therefore, the plaintiff argues that she has not lost her right to rely on the allegations set forth in the third count, which are separate and distinct from the allegations of specific negligence set forth in the first count.
In Estate of Just v. Aparo, 8 CSCR 542 (1993) (Higgins, J.), the plaintiff brought an action arising out of the drowning of his decedent in a boating accident. The plaintiff, in the third count of a revised nine count complaint, asserted an action based on the doctrine ofres ipsa loquitur.
The defendant Aparo argued that the third count of CT Page 997 the plaintiffs complaint should be stricken because there is no independent cause of action based on that doctrine. The court in Aparo held:
 Count three of the plaintiff's complaint is stricken on the ground that it fails to state a cause of action. In count three the plaintiff has repeated his cause of action for negligence from count one and added allegations associated with the doctrine of res ipsa loquitur. The doctrine of res ipsa loquitur is a rule of circumstantial evidence that is designed to allow the inference of negligence and is not an independent cause of action. While the case may be a proper one to apply the doctrine of res ipsa loquitur, it is not proper to plead it as a separate cause of action. The plaintiff having already alleged a cause of action for negligence in count one, cannot allege the same action again in count three by merely claiming it as a separate action based on the doctrine of res ipsa loquitur.
Id., 543. See also Estate of Shrader v. Atlantic CoastCable, 8 CSCR 738 (1993) (Fuller, J.), (the doctrine ofres ipsa loquitur cannot survive independently as an additional count for negligence in a complaint which already contains a negligence count based on the same facts).
Since it is not necessary to allege the elements ofres ipsa loquitur in order to rely upon them, and since a plaintiff does not waive the right to rely upon the doctrine by pleading specific acts of negligence;Schurgast v. Schumann, supra, 479; Estate of Shraderv. Atlantic Coast Cable, supra 739; the defendant's motion to strike count three of the plaintiff's complaint is granted.
II. The Fifth Count
In the fifth count, the plaintiff incorporates the factual allegations as set forth in the first count of her complaint and further alleges that:
 The volatile organic compounds discharged at defendant's property migrated through the groundwater CT Page 998 into plaintiff's property and contaminated plaintiff's well.
 This migration was and continues to be a physical invasion of plaintiff's property by defendant.
By reason of the foregoing, defendant is liable to plaintiff for trespass. Plaintiff's Complaint dated June 25, 1993, pars. 18-20.
In general, trespass is an unlawful intrusion that interferes with another's person or property. Holt v.Crest Lincoln Mercury, Inc., 3 Conn. L. Rptr. 574, 575 (December 10, 1990) (Pastore, S.T.R.).
 The action of trespass to land is used most commonly to describe the intentional and wrongful invasion of another's real property.
 As the action evolved it appears that owners of land are expected to use their property reasonably without unduly interfering with the rights of the owners of contiguous land. Anything that a person does that appropriates adjoining land or substantially deprives an adjoining owner of the reasonable enjoyment of his or her property is an unlawful use of one's property.
 At common law, every man's land was deemed to be enclosed, so that every unwarrantable entry on such land necessarily carried with it some damage for which the trespasser was liable. Any entry on land which was in the peaceable possession of another is deemed a trespass, without regard to the amount of force used, and neither the force of the instrumentality, by which the close is broken, nor the extent of the damages is material.
(Citations omitted.) Id.
The defendant argues that as a matter of law, the plaintiff's action in trespass cannot be maintained because she has not alleged that there has been a forcible entry upon her land and cites Platt Bros. Co.v. Waterbury, 80 Conn. 179 (1907) as authority for that CT Page 999 proposition.
In contrast to the defendant's position, the plaintiff contends that forcible entry need not be alleged and that she has therefore alleged facts sufficient to form the basis for a trespass claim.
"[A] trespass may be committed on, beneath, or above the surface of the earth [and] the phrase `surface of the earth' includes soil, water, trees, and other growths." (Restatement of the Law, Torts 2d, Sec. 159.) Additionally, "[a] trespass need not be inflicted directly on another's realty, but may be committed by discharging foreign polluting matter at a point beyond the boundary of such realty." (75 Am.Jur.2d, Trespass, Sec. 56.)
At least one court, noting the indefinite extent of land both upward as well as downward, has held that "[e]ntry upon the land of another constituting a trespass is not confined to an intrusion thereof upon the surface of the ground." See Holt v. Crest Lincoln Mercury.[,]Inc., supra, 575.
Based on the foregoing, forcible entry need not be alleged in order to make out a legally sufficient trespass claim. Furthermore, with regard to the defendant's argument that based on Platt Bros. Co.v. Waterbury, supra, the plaintiff's trespass action is insufficient because it fails to allege that there has been a forcible entry upon her land, the facts of PlattBros. are inapposite to the facts of the present case. The Platt Bros. case discussed the distinction between torts accompanied or unaccompanied by force only for purposes of determining the statutes of limitations to be applied to an action originally brought in nuisance.
Viewed in the light most favorable to the pleader, the plaintiff has sufficiently alleged facts to support a claim for trespass, and the defendant's motion to strike count five is denied.
III. The Sixth Count
The sixth count relies on the doctrine of strict CT Page 1000 liability and alleges that the defendant engaged in an ultrahazardous activity. In this count, the plaintiff again incorporates those allegations that serve as the factual predicate for her negligence claim and further alleges that:
 The volatile organic compounds used by defendant in its business constituted an instrumentality capable of producing harm, in that the release of such materials to the environment could and did cause contamination of the soil and groundwater in and around the facility.
 The circumstances and conditions of defendant's use of volatile organic compounds, irrespective of a lawful purpose or due care, involved a risk of probable injury to plaintiff's property to such a degree that the activity was intrinsically dangerous to said property.
 Defendant's use of volatile organic compounds was the proximate cause of the contamination to plaintiff's property and the damages sustained by plaintiff . . .
Plaintiff's Complaint dated June 25, 1993, pars. 18-20.
 Sections 519 and 520 of 3 Restatement (Second), Torts, address the doctrine of strict liability for ultrahazardous activities. Section 519 provides in pertinent part: "(1) One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm." Comment (d) of the Restatement points out that the liability of Sec. 519 is not based on any intent of the defendant to do harm to the plaintiff; rather, it arises out of the abnormal danger of the activity itself, and the risk that it creates of harm to those in the vicinity. "It is founded upon a policy of law that imposes upon anyone who for his own purposes creates an abnormal risk of harm to his neighbors, the responsibility of relieving against the harm when it does in fact occur." Id.
CT Page 1001
 The factors for a court to consider in determining whether an activity is abnormally dangerous are listed in Sec. 520 of the Restatement as: "(a) existence of a high degree of risk of some harm to the person, land or chattels of others; (b) likelihood that the harm that results from it will be great; (c) inability to eliminate the risk by the exercise of reasonable care; (d) extent to which the activity is not a matter of common usage; (e) inappropriateness of the activity to the place where it is carried on; and (f) extent to which its value to the community is outweighed by its dangerous attributes." 3 Restatement (Second), Torts, Sec. 520.
 It is important to note that comment (f) of Sec. 520 clearly states that all of the factors need not be present for an activity to be considered abnormally dangerous. Comment (f) to Sec. 520 provides: "In determining whether the danger is abnormal, the factors listed in Clauses (a) to (f) of this Section are all to be considered, and are all of importance. Any one of them is not necessarily sufficient of itself in a particular case, and ordinarily several of them will be required for strict liability. On the other hand it is not necessary that each of them be present especially if others weigh heavily." (Emphasis added.)
 Comment (h) provides that "[a] combination of the factors stated in clauses (a), (b) and (c), or sometimes any of them alone, is commonly expressed by saying the activity is `ultrahazardous' or `extra hazardous . . .'"
Green v. Ensign-Bickford Co., 25 Conn. App. 479, 485-87,595 A.2d 1383 (1991).
 The issue of whether an activity is abnormally dangerous, however, is a question of law for a court to decide.
Green v. Ensign-Bickford Co., supra, 485.
The defendant argues in its memorandum of law that the sixth count should be stricken because the CT Page 1002 use of volatile organic compounds in the packaging and distribution of chemicals is not an ultrahazardous activity.
The plaintiff responds that the facts as alleged in the sixth count set forth the requisite elements of strict liability. Therefore, the plaintiff opines that the sixth count states a claim upon which relief can be granted.
As stated in section 519 of the Restatement of Torts, "[strict] liability arises out of the abnormal danger of the activity itself . . ." "For an activity to be abnormally dangerous, not only must it create a danger of physical harm to others but the danger must be an abnormal one. In General, abnormal dangers arise from activities that are in themselves unusual, or from unusual risks created by more usual activities under particular circumstances." Restatement (Second), Torts, Sec. 520, comment f.
Even though all six factors need not be satisfied in order to find that the defendant's activity is ultrahazardous, the sixth count is devoid of facts which could demonstrate that the packaging and distribution of chemicals as incorporated by reference from the first count rises to the level of an activity which is, in and of itself, unusual. This is especially true when considering that the doctrine of strict liability has "traditionally been applied in cases involving blasting and explosives. [Citation omitted.] Connecticut's sole extension beyond blasting cases is to damage from a concussion resulting from pile driving." (Citation omitted.)Green v. Ensign-Bickford Co., supra, 482-83. Therefore, in taking the allegations as set forth in the sixth count as true, those allegations simply do not comport with the factors enunciated in section 520 of the Restatement. The sixth count fails to approach the threshold of ultrahazardous activity as a matter of law, and the defendant's motion to strike that count is granted.
IV The Eighth Count
The eighth count alleges liability pursuant to General Statutes, Sec. 22a-452, which provides, in part, CT Page 1003 that:
 (a) Any person, firm, corporation or municipality which contains or removes or otherwise mitigates the effects of oil or petroleum or chemical liquids or solid, liquid or gaseous products or hazardous wastes resulting from any discharge, spillage, uncontrolled loss, seepage or filtration of such substance or material or waste shall be entitled to reimbursement from any person, firm or corporation for the reasonable costs expended for such containment, removal, or mitigation, if such oil or petroleum or chemical liquids or solid, liquid or gaseous products or hazardous wastes pollution or contamination or other emergency resulted from the negligence or other actions of such person, firm or corporation. When such pollution or contamination or emergency results from the joint negligence or other actions of two or more persons, firms or corporations, each shall be liable to the others for a pro rata share of the costs of containing, and removing or otherwise mitigating the effects of the same and for all damage caused thereby.
General Statutes, Sec. 22a-452 "creates a civil action for reimbursement for reasonable costs expended for the containment, removal or mitigation of pollution or contamination." Electroformers, Inc. v. EmhartCorp. , 8 Conn. L. Rptr. 307, 309 (January 29, 1993) (Fuller, J.). "It has been recognized that this statute creates a private cause of action for reimbursement for cleaning up environmental contamination from hazardous waste." Id.
The defendant argues that the eighth count should be stricken because the plaintiff has not alleged that she expended costs to abate pollution on her property. The plaintiff counters that the necessary elements of an action pursuant to section 22a-452 have been sufficiently alleged so as to survive a motion to strike.
The eighth count recites, in part, that:
 The contamination of plaintiff's property resulting from the discharge, seepage or filtration of chemical CT Page 1004 liquids or hazardous wastes at the Backus Avenue facility was caused by defendant's negligence or other actions.
 The costs incurred or to be incurred by plaintiff to contain, remove, or otherwise mitigate the effects of the chemical liquids or hazardous wastes resulting from the discharge, seepage or filtration of these substances at defendant's facility are or will be reasonable.
 Plaintiff is therefore, pursuant to General Statutes, Sec. 22a-452, entitled to reimbursement from defendant for reasonable costs expended for containment, removal, or mitigation of the pollution or contamination.
Plaintiff's Complaint dated June 25, 1993, pars. 20-22.
By alleging that costs have been incurred by the plaintiff due to the alleged negligent discharge of chemical substances from the defendant's facility, the plaintiff has sufficiently stated a cause of action pursuant to section 22a-452.
The defendant argues in its reply memorandum that an "ambivalent" allegation that costs "incurred or to be incurred" as alleged in paragraph 21, supra, cannot trigger application of section 22a-452. The defendant further posits that the possibility that the plaintiff "may" incur future costs to remedy the effects of the contamination fails to satisfy the requirements for recovery under the statute.
However, viewed in the light most favorable to the pleader, the plaintiff has alleged, in part, that she has incurred costs associated with the alleged chemical discharge. If the defendant desired a deletion of that part of the eighth count which alleged reimbursement for future costs which may be incurred by the plaintiff, the defendant's procedural remedy would have been a request to revise pursuant to Practice Book, Sec. 147, and not a motion to strike. Based on the foregoing, the defendant's motion to strike count eight is denied. CT Page 1005
V. The Ninth Count
The ninth count alleges liability pursuant to General Statutes, Sec. 22a-16, the Connecticut Environmental Protection Act (CEPA), which provides:
 The attorney general, any political subdivision of the state, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity may maintain an action in the superior court for the judicial district wherein the defendant is located, resides or conducts business, except that where the state is the defendant, such action shall be brought in the judicial district of Hartford-New Britain, for declaratory and equitable relief against the state, any political subdivision thereof, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity, acting alone, or in combination with others, for the protection of the public trust in the air, water and other natural resources of the state from unreasonable pollution, impairment or destruction.
By enacting section 22a-16, the legislature has provided any party with a specific action for declaratory or equitable relief. Tamm v. Burns, 222 Conn. 280,290, 610 A.2d 590 (1992). Statutes such as section22a-16 "are remedial in nature and should be liberally construed to accomplish their purpose." ManchesterEnvironmental Coalition v. Stockton, 184 Conn. 51, 57,441 A.2d 68 (1981).
The defendant argues that section 22a-16 does not apply to the plaintiff's claim because the history of CEPA, and the case law which has developed under it, reveals that CEPA was not intended to provide a remedy to an individual property owner such as the plaintiff, but only to concerned citizen groups or public entities and officials in an effort to prevent damage to environmental resources that affect the public as a whole. The defendant's position is that since the plaintiff already has an ownership interest in the land CT Page 1006 sought to be protected, and since the plaintiff also has other means by which she may seek relief — specifically, other counts set forth in her complaint — the plaintiff does not fall within the class of persons intended to be protected by General Statutes, Sec.22a-16.
In response, the plaintiff postulates that section22a-16 states that "any person," and not any "group of persons," may bring suit and since nothing in the statute itself or case law prohibits a party with a private interest from also bringing suit in the public interest, her ninth count states a claim upon which relief can be granted.
Since the legislature has provided any party with a specific action for injunctive relief, the plaintiff has sufficiently alleged a claim pursuant to General Statutes, Sec. 22a-16. Therefore, the defendant's motion to strike count nine is denied.
[EDITORS' NOTE: THE CASE THAT PREVIOUSLY APPEARED ON THIS PAGE HAS BEEN MOVED TO CONN. SUP. PUBLISHED OPINIONS.] CT Page 1023