[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action was initiated by Bell Power Systems, Inc. by virtue of summons and complaint dated March 12, 1993. Thereafter by Revised Complaint of September 16, 1993, the plaintiff proceeded to trial on four counts alleging breach of contract, negligence, a statutory claim under Connecticut General Statutes Section 22a-452 and nuisance. These claims eminate from allegations concerning the defendant's installation of an oil/water separator tank at the plaintiff's industrial facility in Middletown, Connecticut in 1976.
Prior to trial, the parties stipulated and waived the apparent mandatory clause in the contract requiring arbitration of the claims that thereunder and further waived any claims in connection with improper venue.
Based upon the credible, admissible and relevant evidence offered during the course of the trial, the court makes the following findings of fact and conclusion of law. There was a contract dated February 6, 1976 between the plaintiff/owner and the defendant/contractor to build and construct a facility at the Industrial Park in Middletown, Connecticut. A part of the construction contract, the plumbing component included installation of an oil/water separator tank. Said tank was designed to receive a mixture of oil and other materials combined with water from within the plant connected with a system of floor drains and a pipe to the tank buried outside the building. Water, being heavier, sinks in the tank, while the other materials rise to the surface of the tank. Theoretically, hydrostatic pressure causes the water to be discharged through the outlet pipe and into the sanitary sewer while the other material is periodically pumped out through the manhole cover located on the top of the tank. After construction of the building, from 1976 through 1981 periodic inspection and monitoring and pumping was carried out by the plaintiff. At no time was there any evidence of any type of CT Page 8929 malfunctioning noted. From 1981 to 1988 while the named plaintiff occupied the premises some periodic monitoring and pumping was carried out by the plaintiff and/or its employees until it leased the premises in 1988. During this whole period of time there was no evidence of any malfunctioning of the tank.
In 1988 the plaintiff moved away from the premises and leased said property to another corporation. Subsequent to 1988 any monitoring or pumping of the tank was carried out by another party who is not a party to this lawsuit, and offered no evidence.
On about April 30, 1991 the tenant in possession was carrying out some changes and/or improvements in installing a filtration system when they called the plaintiff to report some presence of oil in the soil surrounding the tank. Various and extensive losses and amounts of damage are claimed by the plaintiff as due and owing from the defendant as a result of the defendants negligence and/or breach of contract as claimed in four counts of the complaint.
During the course of the trial there was no direct evidence produced concerning the condition of the tank itself. Apparently in the confusion surrounding this event the tank ultimately was hauled away and no one knows where it is. In addition, no one who was directly involved with the excavation in the area around the septic tank at the time oil was discovered in the surrounding soil was made available or testified during the course of the trial.
The plaintiff's claims, as outlined in count one, allege a breach of contract. In said claim, the plaintiff alleges that on April 30, 1991 Bell excavated the oil/separator tank and discovered that the unused inlet and outlet holes had not been sealed by the defendant as required by the contract of 1976 as alleged in the complaint. The failure to seal the unused inlet and outlet holes on the oil separator tank at the time of its installation was alleged as a breach of duty and constituted a breach of contract.
In the second count the plaintiff claims that its damages were due to the defendants negligence in failing to seal the unused inlet and outlet holes in the tank at installation. The court concludes that the evidence fails to establish that the defendant failed to seal any unused inlet and outlet hole in the CT Page 8930 tank at installation. The evidence does not provide an adequate foundation for this court to conclude that the defendant breached its contract in connection with the installation of said tank with the defendant in 1976. A long period of use, in addition, leads to the inference that the tank was properly installed and nothing was out of order. There is no basis for this court to conclude that the defendant installed the tank with any of the inlet or outlet holes unplugged other than those necessary to make the tank operate as it was designed to be operated in connection with its installation. There is only scant basis in the evidence for a conclusion that there was a hole in the tank offered by one Ms. Sahi. Her observation was made on May 2, 1991, fifteen years after the installation of the tank and after extensive work had been done in and around the area of the tank in connection with excavation for the installation of the filtration system. This work was done by an unknown third party who offered no evidence at the time of the trial. When Ms. Sahi arrived at the cite on May 2 to inspect, extensive work in excavation had been performed to and around the tank by this third party, United Industrial Services, Inc. As aforesaid the plaintiff failed to produce a representative to testify to the condition of the tank when United fully uncovered it on April 30 and May 1 or to what work was done to the tank in connection with United's work on and around the tank April 30, May 1 and May 2, 1991. Accordingly, if the court were to conclude that there was in fact a hole in this tank, there is no basis in the evidence for the court, other than by use of speculation, to ascertain the cause and/or time when any such opening might have been occurred on the tank.
Accordingly, the evidence does not offer a sufficient basis for the court to conclude as to how the oil came to contaminate the earth in this area. Again, to allocate a specific reason for this contamination would be to engage in speculation, not permissible under our law, as a basis for assigning responsibility.
The plaintiff has failed in its burden of proof to establish negligence on the part of the plaintiff as a source of the oil leakage from the tank, if any. Consequently, there may have been other collateral sources from which said oil may have come including leakage from other parts of the plaintiff's operation and/or leakage during pump-out operation of the tank from 1976 through 1991 or other surface spills in the area. CT Page 8931
It is of note to mention that the testimony of Mr. Bell and Mr. Gillon did not provide a sufficient basis for the court to conclude that any oil may have leaked through an open inlet hole, due to the pipe locations of the inlet and outlet holes in the tank.
If in fact there was oil contamination in the soil around this tank location it has not been established sufficiently for this court to determine the source or the cause of any such contamination.
The plaintiff argues that liability on the part of the defendant is established by virtue of operation of doctrine of res ipsa loquitur. Where appropriate, said doctrine may allow an inference of negligence. This doctrine has no evidential force, does not shift the burden of proof and does not give rise to presumption. Lowman v. Housing Authority, 150 Conn. 665, 670
(1963).
In addition the Supreme Court has laid out three conditions under which the doctrine may apply. These are spelled out in the case of Malvicini v. Stratfield Motor Hotel, Inc., 206 Conn. 439
(1988). The evidence fails to establish that these conditions have been fulfilled and therefore the court concludes that the plaintiff's reliance on the doctrine of res ipsa loquitur in order establish liability is not well placed. In addition, since the plaintiff proceeded affirmatively to establish its allegations in negligence its reliance on the res ipsa doctrine is thereby precluded, Cristini v. Giffin Hospital, 134 Conn. 282,286; Aubrey v. Meriden, 121 Conn. 361, 367.
The plaintiff in count four pleads to establish liability of the defendant based upon nuisance. The court concludes that the evidence does not support a conclusion that plaintiff is entitled to recover on the basis of nuisance since all the elements of said claim have not been satisfied, to wit: 1) the condition complained of had a natural tendency to create danger and inflict injury upon person or property; 2) the danger created was a continuing one; 3) the use of the land was unreasonable or unlawful; and 4) the existence of the nuisance was a proximate cause of the plaintiff's injury. The evidence fails to establish these elements and accordingly the plaintiff's reliance on this doctrine to establish a basis for recovery is not well placed.
In count three, the plaintiff seeks reimburses for expenses CT Page 8932 incurred in the cleanup of the Smith Street site under the provisions of Connecticut General Statutes Section 22a-452.
Said statute affords no relief to the plaintiff herein. The court has previously concluded that if, in fact, there was contamination the evidence fails to establish that it was caused by or the result of negligence of the defendant-Hogan.
The court further finds that the claim of the plaintiff against the defendant based upon contract as outlined in count one is barred by the statute of Limitations, Connecticut General statutes Section 52-576.
The court further finds that the allegations of count two based upon negligence are further barred by the Statute of Limitations Section 52-577 Connecticut General Statutes in that they were not brought but within three years from the date of the act or omission complained of. Said act or omission complained of were completed as alleged by the plaintiff and occurred in 1976 and, as evident from the record, this lawsuit was not started until 1993. The court notes that the plaintiff claims that Connecticut General Statutes Section 52-577c may afford relief hereunder. The plaintiff reports to have a claim for property damage and attempts to bring said claim within the purview of the Section 52-577c. This court cannot find that the plaintiff alleges or proves that a release of a pollutant into the environment caused to the plaintiff any property damage by reason of exposure to said pollutant, therefore it would appear that Section 52-577c is not operable under the factual pattern of this case. Coincidentally, the court concludes that Section 22a-449
(d)-1 of the Regulations of the Connecticut State Agencies, a regulation of the Department of Environmental Protection is not operative in this case. The court concludes that this site is in fact"facility" and that the installation in question is in fact a facility used for the storage or handling of waste oil.
The court further finds that neither the plaintiff nor subsequent tenant in possession complied with the requirements of Connecticut Department of Regulations 22a-449 (d)-1 in that they failed to monitor daily as required by said regulations. The inescapable conclusion from this finding is that the plaintiff was chargeable with contributory negligence in failing properly utilize monitor and maintain the tank in violation of the appropriate regulations. CT Page 8933
The court finds no other recognized basis in Connecticut Law for tolling the Statute of Limitations.
The court grants the defendant's motion to strike exhibits 16, 17, 20, 21 and 22, for failure of the plaintiff to establish a sufficient foundation that said expenses were incurred by the plaintiff in connection with the incident alleged in the complaint.
Accordingly, judgment is entered in favor of the defendant, J. H. Hogan Inc. on all counts.
It is so ordered.
HIGGINS, J.
Judgment entered in accordance with foregoing Memorandum of Decision.
Jonathan W. Field, Deputy Chief Clerk